# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TERRANCE J. SHAW,<br><br>      Plaintiff,<br><br>v.<br><br>KEVIN ANDERSON, RONALD EDWARDS, SPENCER ABBOTT, PAUL S. KEMPER, STEVEN JOHNSON, JASON ALDANA, ANTHONY WHITE, PETER DECKER, and MICHAEL FENKL,<br><br>      Defendants. | Case No. 18-CV-140-JPS<br><br><br>**ORDER** |

1. **INTRODUCTION**

  The plaintiff, Terrance J. Shaw ("Shaw"), is incarcerated at Racine Correctional Institution ("RCI"). He alleges that because of his arthritis, he has a special handling order in his medical file at the prison for use of leather (as opposed to metal) restraints during transport. Despite this order, several officers transported him on several occasions using metal restraints. The Court permitted Shaw to proceed on a claim of deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against defendants Ronald Edwards ("Edwards"), Spencer Abbott ("Abbott"), Paul Kemper ("Kemper"), Steven Johnson ("Johnson"), Jason Aldana ("Aldana"), Kevin Anderson ("Anderson"), Anthony White ("White"), Peter Decker ("Decker"), and Michael Fenkl ("Fenkl"). *See* (Docket #32, Screening Order; Docket #33, Second Amended Complaint).

  On June 3, 2019, the defendants filed a motion for summary judgment, along with a brief, proposed facts, and supporting declarations.

(Docket #35–#46). Shaw filed a brief in response to the defendants' motion, a response to their proposed findings of fact, his own proposed findings of fact, and a declaration. (Docket #47–#50). The defendants did not file a reply, and their time to do so has long since passed. Even more troubling, they also did not file a response to Shaw's proposed findings of fact.[1]

Federal Rule of Civil Procedure 56 and Civil Local Rule 56 describe in detail the form and contents of a proper summary judgment submission. In particular, the rules permit a non-moving party to submit his own "statement . . . of any additional facts that require the denial of summary judgment," Civ. L. R. 56(b)(2)(B)(ii), and they prescribe the procedure for the moving party to reply to those facts, Civ. L. R. 56(b)(3)(B). The local rules also make explicitly clear that the Court "will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." Civ. L. R. 56(b)(4); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed for purposes of the motion[.]").

There is simply no reason for this Court to excuse the defendants' failure to respond to Shaw's proposed facts. The Court regularly holds *pro se* litigants to this procedural rule, *see Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants), and it will do the same for the defendants here, who are represented by competent counsel who are

---

[1] The same is true in at least two other cases pending before this Court. *See Szopinski v. Nelson et al.*, 18-CV-436-JPS (E.D. Wis.) and *Szopinski v. Koontz et al.*, 18-CV-437 (E.D. Wis.). Even in light of the heavy caseload born by the Wisconsin Department of Justice in prisoner cases, counsel's failure to complete briefing on dispositive motions is inexplicable.

undoubtedly familiar with the Court's rules. Thus, the Court will deem Shaw's proposed facts, (Docket #49), undisputed for purposes of deciding the defendants' motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(2); Civ. L. R. 56(b)(4).

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

## 3. RELEVANT FACTS

The following facts are taken from Shaw's proposed facts, (Docket #49), which the Court deems undisputed, as well as the defendants' proposed facts, (Docket #37), subject to Shaw's disputes of the same, (Docket #48), and the parties' declarations, (Docket #38–#46 and #50).

At all times relevant to this lawsuit, Shaw was an inmate at RCI and the defendants were employees of RCI. This suit involves three occasions in 2016 when Shaw was transported from the prison to off-site medical appointments. The parties agree that Shaw was restrained in metal, not leather, cuffs for these trips.

### 3.1 Use of Metal Restraints

This first trip was on September 27, 2016. Officers Abbott and White escorted Shaw. Abbott began to place Shaw in metal restraints, and Shaw informed him that he had a medical condition (arthritis) requiring use of leather restraints instead. Shaw had in his possession at the time a copy of the medical order specifying a soft restraint restriction, and he showed it to the officers. *See* (Docket #48 at 1 and #49 at 1). Abbott called the control center to have someone there consult the restriction database, and he was told that it showed no restrictions for Shaw. Abbott then returned to Shaw and placed the metal restraints on him for transport.

Following this trip, Shaw filed a grievance about the use of metal restraints. Inmate complaint examiner Michelle Bones ("Bones") investigated the incident and discovered that Shaw had a soft restraint restriction in his medical file as of August 20, 2016, but it was mistakenly removed at some point before September 27, 2016. The prison's health services manager confirmed that the restriction should not have been removed, and so it was reactivated on September 30, 2016.

The second trip occurred on October 12, 2016. Officers White and Decker escorted Shaw. Decker claims that Shaw did not tell him about his leather restraint restriction, and he does not say whether he checked the database for any restriction. He is not a regular transport officer. White claims that he checked the database for a restriction, as he always does when transporting inmates, but because he "was unaware that you have to click on an option to show all rows" to see all of an inmate's restrictions in the database, he "may have not seen Shaw's leather restraints restriction." (Docket #44 at 2).

On this point, the defendants further explain in their proposed facts that under the "medical services tab" in the database, "up to 10 restrictions are automatically shown on the screen. If more restrictions are active, an officer can click 'Show All Rows' on the screen to view additional restrictions." (Docket #37 at 3). Shaw disputes that White did not know about his medical restriction, and he points out that his leather-restraints restriction (reactivated on September 30) is the seventh item under the medical services tab in his file. *See* (Docket #40-2 at 19). In other words, it would have been viewable without the "Show All Rows" feature if White checked the database, as he says he did. Further, Shaw avers, and the Court accepts as true, that he presented White and Decker with a copy of his medical restriction but was told that the computer did not show a restriction, and he was therefore ordered to submit to transport in metal cuffs. Shaw complained of pain continuously during the transport.

The third trip occurred more than a year later, on October 30, 2017. Officers Edwards and Fenkl escorted Shaw. Fenkl claims to have been unaware of the click-down option in the inmate restriction database, and he "may have missed Shaw's restriction for soft restraints for this reason." (Docket #46 at 3). This denial is questionable given that Shaw's leather-restraint restriction would have been viewable without using the click-down option. When Edwards began to place metal restraints on Shaw, Shaw told him that he was on a restriction requiring leather restraints. Edwards took Shaw's word for it and went to the control center to obtain leather restraints. The officer in the control center looked for leather restraints where they are usually kept but found none. At the time, RCI had only one set of leather cuffs, and they were being used with another inmate.

Edwards returned to Shaw and told him there were no leather restraints available. Edwards says that Shaw then submitted to use of metal restraints without complaint or protest. But Shaw says, and the Court accepts as true, that Shaw objected and asked for a "white shirt," but was refused. Edwards told Shaw that he could refuse to be transported in metal restraints, but he would have to either sign a refusal-of-medical-treatment form or be given a conduct report for disobeying an order to be transported. Shaw elected to be transported in metal cuffs, and he complained continuously during the trip of the pain the cuffs caused him.

### 3.2 Shaw's Grievances

As noted above, Shaw filed a grievance after the September 27 transport complaining that metal restraints had been used on him. Bones affirmed the grievance and recommended that health services management review inmate restrictions to ensure timely input into the database. She also recommended that Aldana, the security director, review the topic of medical restrictions with transportation staff to ensure compliance in the future. Kemper, RCI's warden, reviewed and affirmed the grievance on October 24, 2016, and sent the decision via email to health services management and to Aldana. Aldana spoke to Anderson, the transportation captain, to make him aware of the grievance. Shaw's leather restraint restriction was reactivated.

On October 14, 2016, Shaw submitted another grievance complaining he was transported to a medical appointment on October 12, 2016 in metal restraints despite his leather restraints restriction. Bones affirmed the grievance, stating that the restriction should have been in place and transportation officers should have used leather restraints. Bones recommended that health services staff review inmates' restrictions and

ensure they were noted on transport paperwork. She also recommended that Aldana review the issue again with transportation staff. Kemper affirmed the grievance and sent the same to security management and health services management to ensure that the issue was addressed. Johnson, the deputy warden, first became aware of this issue when he received Kemper's message; Johnson then contacted Aldana, who assured Johnson that the issue was being addressed.

Bones and Aldana both followed up with Anderson regarding this grievance. Anderson says that he then "followed up with staff ensuring review of restrictions before transport." (Docket #42 at 2). Anderson explains that "[w]hen follow up to an inmate complaint is needed, my normal process is follow-up with people individually. In this instance, I would have approached the transportation officers and discussed checking restrictions before transport of an inmate to ensure restrictions are followed." *Id.* The individual transport officers (Edwards, White, Decker, Fenkl, and Abbott) all aver that they were never contacted by ICE staff about Shaw's grievances, but they do not say whether they were contacted by Anderson about Shaw's restraint issue.

On November 13, 2017, Shaw filed a third grievance alleging that Edwards transported him in metal restraints. Inmate complaint examiner Randy Miller ("Miller") reviewed the special handling restrictions in the prison's database and confirmed that a permanent restriction was in place. Miller also consulted with health services and confirmed the restriction was in effect and viewable by transportation staff. Kemper affirmed the grievance and sent it to Johnson and others to alert them to the incident. Johnson contacted the acting security director Tom Wiegand and told him to address the issue.

4. **ANALYSIS**

The Eighth Amendment secures an inmate's right to adequate medical care. Prison officials violate that right if they exhibit deliberate indifference to an inmate's serious medical needs. *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 422 (7th Cir. 2017). To succeed on a claim of deliberate indifference, a plaintiff must prove that "(1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

With regard to the second element, the plaintiff must show that the defendant acted with the requisite culpable state of mind. *Id.* This entails a showing that the defendant had "subjective knowledge of the risk to the inmate's health" and the defendant "disregard[ed] that risk." *Id.* In other words, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* Evidence that the defendant "acted negligently is insufficient to prove deliberate indifference." *Id.* Rather, "deliberate indifference is simply a synonym for intentional or reckless conduct, and that reckless describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Id.*

There are material disputes of fact as to whether officers White, Decker, Edwards, and Fenkl were deliberately indifferent to Shaw's medical need during the October 12, 2016 transport (White and Decker) and the October 30, 2017 transport (Edwards and Fenkl). As to the first element of his claim, Shaw has put forward evidence that he had a serious medical

condition—arthritis—for which a doctor prescribed the use of soft restraints. The defendants do not contest this element. As to the third element, Shaw avers that he suffered continuous pain each time he was cuffed in metal restraints; the defendants deny he complained of any pain.

As to the second element, deliberate indifference, Shaw has created a dispute of fact as to whether the officers knew the health risk posed by the use of metal restraints when they used them on Shaw. Construed in Shaw's favor, the evidence demonstrates that White and Decker knew of Shaw's medical issue both because Shaw showed them his paperwork and because White checked the database and would have seen the restriction there, listed as the seventh item on the first page. White and Decker deny they saw the restriction, but it will be up to a jury to decide who is telling the truth.

Similarly, Edwards and Fenkl knew about Shaw's medical issue because Shaw told them and because Fenkl likely saw the restriction in the database. Knowing about Shaw's condition, the officers put Shaw in the impossible position of either submitting to the metal restraints or not going to his medical appointment, signing a refusal-of-medical-care form, and being given a conduct report. Again, the defendants dispute this, saying that Shaw voluntarily submitted to the metal restraints when no leather restraints were available, but this is a question for a jury.

The remaining defendants are entitled to judgment in their favor. Abbott was only involved in the September 27, 2016 transport. When Shaw told him about his medical restriction, Abbott called the control center to confirm and was told that Shaw had no such restriction. Even though the database was later found to be wrong, it was not unreasonable for Abbott to rely on it. *Cf. Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683–84 (7th

Cir. 2012) (sincere, even if mistaken, belief about the lack of a risk of harm does not support a conclusion that a nurse was deliberately indifferent to an inmate's medical needs).

Kemper, Johnson, Aldana and Anderson lack the required personal involvement to implicate Shaw's Eighth Amendment rights. *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.") (citation omitted); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (to be liable, a supervisory defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye"). These defendants did not personally put metal restraints on Shaw; their involvement is limited to having been notified by the complaint examiner or a superior officer that other officers had transported Shaw with metal restraints on two occasions (a year apart) after his medical restriction was reinstated in his file. Each responded to this information by instructing subordinates to address the issue by reinforcing the importance of compliance with medical restrictions. *Id.* at 595 (wardens can delegate to personnel below them, because "[t]he division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively").

Shaw points out that Anderson, the transportation captain, received notice from the ICE and his superiors about the repeated failure of his officers to transport Shaw with soft restraints, and Shaw argues that Anderson appears to have done nothing with that information. Anderson says that he talked to his transportation officers about complying with

medical restrictions. Shaw claims this cannot be true because the transportation officers (Edwards, White, Decker, Fenkl, and Abbott) aver that they were never contacted about Shaw's grievances. But it is clear from those officers' declarations that they meant they were never contacted directly by the ICE about Shaw's grievances, not Anderson. Without more, this is not sufficient to create a jury question.

In other words, these supervisory defendants acted reasonably to address each lapse with incremental steps as they learned of the lapses. At worst, their conduct was negligent, and constitutional liability does not flow from negligence. Summary judgment will be granted in their favor, and they will be dismissed.

**5.** **QUALIFIED IMMUNITY**

As explained above, there is evidence to support a reasonable jury's conclusion that White, Decker, Edwards, and Fenkl violated Shaw's Eighth Amendment rights by ignoring his medical restriction for use of soft restraints and forcing him to submit to metal restraints. The case against them will move forward unless qualified immunity applies.

Qualified immunity shields officials from the civil consequences of their constitutional violations when the law did not put the officials on clear notice that their conduct would be unlawful. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The test for qualified immunity is (1) whether the defendants' alleged actions violated the plaintiff's constitutional rights; and (2) "whether the implicated right was clearly established at the time." *Jones v. Wilhelm*, 425 F.3d 455, 461 (7th Cir. 2005). Once the defense is raised, the plaintiff bears the burden to defeat it. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015).

To overcome the defendants' assertion of qualified immunity, Shaw must first proffer facts which, if believed, amount to an actual violation of his constitutional rights. *Katz*, 533 U.S. at 201. For this prong of the inquiry, the court evaluates whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right. *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019). As explained above, Shaw has done this. He has put forward evidence that he has a serious medical condition, *i.e.* arthritis, that officers White, Decker, Edwards, and Fenkl knew about his condition and his medical restriction for soft restraints at the time they transported him on October 12, 2016 and October 30, 2017, and that the officers deliberately cuffed him in metal restraints, in defiance of the medical order to the contrary, causing him pain.

Next, Shaw must show that the constitutional right the defendants violated was "clearly established under applicable law at the time and under the circumstances that the defendant official acted." *Easterling v. Pollard*, 528 Fed. App'x 653, 656 (7th Cir. 2013). A right is clearly established if its violation "is so obvious that a reasonable state actor would know that what they are doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional." *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001). Factually identical precedent is not necessary; the guiding question is whether the official would have had "fair warning" that the conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The question in this case is whether the defendants had "fair warning" that forcing an inmate to submit to metal restraints with knowledge of the inmate's documented medical need for soft restraints violates the Constitution.

Shaw argues that it is clearly established law that prison officials must follow valid medical orders of a doctor in treating inmates' medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Shaw also points to a case from the Eighth Circuit affirming a jury verdict in favor of an inmate plaintiff with arthritis who was repeatedly cuffed with his hands behind his back despite a medical order to the contrary. *Aswegan v. Bruhl*, 965 F.2d 676, 677 (8th Cir. 1992).[2] Finally, Shaw cites to a case from the Northern District of Illinois where the court denied the defendant's request for qualified immunity at summary judgment because there was an issue of material fact as to whether the defendant knew about the plaintiff's medical permit calling for the use of leather restraints. *Massey v. Cooper*, No. 92 C 4677, 1996 WL 563695, at *6 (N.D. Ill. Sept. 30, 1996). In so holding, the court found that "any reasonable prison guard would know that the plaintiff has a right not to have his medical treatment intentionally interfered with." *Id.* at *5.[3] Having failed to file a reply brief, the defendants offered no cases or argument to rebut Shaw's citations.

---

[2]In deciding qualified immunity, a district court looks first to controlling Supreme Court precedent and then to decisions from its own judicial circuit. *Jacobs v. City of Chi.*, 215 F.3d 758, 767 (7th Cir. 2000). Only "[i]n the absence of controlling precedent," should the court "broaden [its] survey to include all relevant caselaw in order to determine whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (quotation and internal marks omitted). Shaw's citation to an out-of-circuit case is superfluous to his other citations—in particular his citation to Supreme Court precedent—and therefore does not doom his argument that the right was clearly established for the defendants in this case.

[3]Shaw's citation to *Massey* appears in a motion for leave to submit additional authority in support of his qualified immunity argument. (Docket #51). The defendants did not oppose or otherwise respond to this motion, so the Court will grant it.

Shaw has met his burden to show that during the relevant time period (*i.e.* as early as October 2016) he had a clearly established right to be free from prison officials' intentional interference with his documented medical treatment plan. This includes his medical order for soft restraints to accommodate his arthritis. *See Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997) (explaining that the phrase "serious medical needs" encompasses not only conditions that are life-threatening or that carry risks of permanent, serious impairment if left untreated, but also those in which the deliberately indifferent withholding of medical care results in needless pain and suffering); *see also Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017) ("The Supreme Court has long held that prisoners have an Eighth Amendment right to treatment for their serious medical needs. For purposes of qualified immunity, that legal duty need not be litigated and then established disease by disease or injury by injury.") (quotation and internal marks omitted).

Because Shaw's right to be free from the officers' interference with his medical restriction was clearly established in 2016, and because Shaw has presented evidence that amounts to an actual violation of his constitutional rights, the defendants are not entitled to qualified immunity at this juncture.

6. **CONCLUSION**

For the reasons stated above, the defendants' motion for summary judgment will be granted in part and denied in part. The motion will be granted with respect to Abbott, Kemper, Johnson, Aldana and Anderson. Those defendants will be dismissed from this action.

However, Shaw has demonstrated that genuine disputes of material fact exist with respect to his deliberate indifference claim against officers

White, Decker, Edwards, and Fenkl. Further, those defendants are not entitled to qualified immunity at this time. Therefore, the defendants' motion for summary judgment will be denied with respect to White, Decker, Edwards, and Fenkl. The Court will set a trial date by separate order for Shaw's claim against those defendants.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #35) be and the same is hereby **GRANTED in part and DENIED in part as reflected in this Order**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to cite additional authority (Docket #51) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that defendants Spencer Abbott, Paul Kemper, Steven Johnson, Jason Aldana and Kevin Anderson be and the same are hereby **DISMISSED** from this action.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge